**Alfred M. GRONER and Jeanne B. Groner, Appellants,**

v.

**Edwin Jason DRYER, Appellee.**

**No. 4514.**

District of Columbia Court of Appeals.

Argued Feb. 17, 1969.

Decided Aug. 26, 1969.

2. 32 Am.Jur. Landlord & Tenant § 318 (1941).

Thomas G. Laughlin, Washington, D. C., for appellants.

Edwin Jason Dryer, pro se.

Before HOOD, Chief Judge, and FICKLING and GALLAGHER, Associate Judges.

GALLAGHER, Associate Judge.

This is an appeal from a summary judgment awarding plaintiff, appellee here, overdue rent on certain apartment properties located in Virginia.

In November 1960, appellee leased these properties to appellants for a term of five years.[1] The lease contained a renewal clause giving the lessees the option of renewing for an additional five years. The renewal clause provided for arbitration in the event the parties were unable to agree on an adjusted rental. The lease further provided that the cost of major repairs, which were defined as those for which the low bid exceeded $50, were to be borne by

---

1. Appellants, husband and wife, both signed the lease as lessees.

the lessor while the cost of "maintenance" was to be borne by the lessees.

In July of 1964, prior to the expiration of the original term of the lease, the lessees' interest under the lease was assigned to one Mrotek, who was a codefendant below.[2] Appellee acknowledged the assignment in a letter to appellant Alfred Groner, but stated that the assignment did not release him from his obligations under the lease as a lessee. The record indicates that there was no further communication between the parties until this action was filed.

In April 1965, Mrotek (assignee) informed appellee (lessor) of his intention to renew the lease through his personal corporation. Appellee and Mrotek later agreed to renew the lease for a five-year term at a substantial increase in rental. There were also discussions concerning property taxes, insurance and exterior painting of the properties. Appellants were given no notice of the renewal and did not participate in the negotiations leading to the rental increase.

A controversy developed over exterior painting which finally culminated in the institution of the present action in September of 1966 after Mrotek Enterprises withheld from its rent payments an amount equal to its expenditures on the painting. Appellee's complaint alleged that such painting was maintenance for which the lessor was not responsible. Appellants were sued on the theory that the assignment did not effect a release of their obligations and therefore they remained liable to the lessor-appellee on their covenant to pay rent.

Assignee Mrotek Enterprises, Inc. was also a defendant below. Service was made on an agent appointed by appellants in the original lease and subsequently a default judgment was entered against it. Mrotek Enterprises later moved to vacate the default judgment on the ground that service on it had not been effected and the motion was denied. It also has appealed to this court. (See Mrotek Enterprises, Inc. v. Dryer, D.C.App., 256 A.2d 557, decided this date).

Appellee moved for summary judgment, alleging there was no material issue of fact and he was entitled to judgment. More particularly, he asserted that the lease and other exhibits accompanying his motion and affidavit established that (a) there being no release, appellants remained liable for rent in the extended term of the original lease, and (b) appellee, as lessor, was not responsible for the exterior painting of the buildings. Appellants opposed the motion, alleging that appellee had negotiated a "new lease" under different terms at the time of the renewal; that, as to the painting, there was a dispute concerning the material fact of what constituted a major repair under the lease; and that appellants no longer had any liability under the original lease. Appellee's motion for summary judgment was denied on the ground that there was a material issue of fact.

Appellee later took appellant Alfred Groner's deposition, eliciting testimony that the only change in the terms of lease of which he had knowledge was the increased rental figure. Appellee renewed his motion for summary judgment. Appellants later filed a cross-motion for summary judgment alleging that appellee had not established a prima facie cause of action. In their supporting memorandum, appellants alleged that appellee was withholding information as to the terms of the lease with Mrotek Enterprises, but that in any event appellants' liability was extinguished at the end of the five-year term of the original lease because a new lease was entered

2. The actual assignment is not in the record. The record contains references to the assignment in communications between the parties to this appeal which, if read literally, would raise a question as to whether the assignment was signed by appellant's wife as co-lessee with her husband.

into between appellee and the assignee at that time. Appellee opposed the cross-motion.

The court granted appellee's renewed motion for summary judgment and denied appellants' cross-motion. Appellants' principal contention on appeal is that the negotiation of the renewal between appellee and Mrotek Enterprises resulted in a new lease for which appellants had no responsibility.

In rendering the judgment below, the court cited Kornblum v. Henry E. Mangels Co., 167 So.2d 16 (Fla.Dist.Ct.App.1964), and an accompanying annotation at 10 A.L. R.3d 812 (1966). In that case there was a renewal of a lease by an assignee corporation, formed subsequent to the lease and the recipient of the leasehold pursuant to a clause in the lease specifically providing for an assignment to it by the original lessee. After a trial without a jury,[3] the original lessee was held liable for the assignee's default since (a) there was a clear intent by the lessor to look to the original lessee for performance, and (b) nothing in either "the assignment [or] the exercise of the options acted to annul or change the defendant's obligations under the lease agreement * * *." Kornblum, supra at 19.

It is evident that Kornblum is distinguishable in two material respects. In Kornblum there was no showing that the exercise of the option to renew increased the lessees' obligations under the lease. Here, the renewal entailed, among other things, a substantial rental increase which enlarged the obligations of the lessees. Secondly, in Kornblum, the case was not disposed of by summary judgment as was done here.

■ In determining whether the record contains a material issue of fact which will act as a bar to the granting of summary judgment, the reviewing court will resolve all doubts and inferences against the moving party. Dewey v. Clark, 86 U.S.

App.D.C. 137, 143, 180 F.2d 766, 772 (1950); Purcellville National Bank v. Carter, D.C. Mun.App., 146 A.2d 206, 207 (1958). In fact, to prevail on a motion for summary judgment "the situation must justify a directed verdict insofar as the facts are concerned." Dewey v. Clark, supra, 86 U.S.App.D.C. at 143, 180 F.2d at 772.

■ The fact that there were cross-motions in the instant case does not foreclose the question of whether an issue of material fact remained. American Manufacturers Mutual Insurance Co. v. American Broadcasting-Paramount Theatres, Inc., 388 F.2d 272, 279 (2d Cir. 1967). The question of whether there is a material issue of fact is still for the court, and the parties' determination is not controlling. Cram v. Sun Insurance Office, Ltd., 375 F.2d 670, 673 (4th Cir. 1967). In making the motion for summary judgment, a party asserts that there is no issue of fact only if the theory of his own motion is correct. The making of the motion does not preclude him from litigating issues of fact which may exist if the legal theories relied upon by his adversary are accepted by the court. Krug v. Santa Fe Pac. R.R., 81 U.S.App. D.C. 288, 290, 158 F.2d 317, 319 (1946); Walling v. Richmond Screw Anchor Co., 154 F.2d 780, 784 (2d Cir.), cert. denied, 328 U.S. 870, 66 S.Ct. 1383, 90 L.Ed. 1640 (1946).

While each party was willing to recognize that there was no material issue of fact for purposes of his own motion, they were in basic conflict as to the effect of the agreement which was reached between appellee and Mrotek as president of Mrotek Enterprises. Appellants contended it resulted in a new lease. Appellee contended that it was a continuation of the original lease.

The deposition of Alfred Groner reveals that he learned after this suit was filed that the rent had been increased, though he did

3. The parties entered into a stipulation in lieu of proof and the case was submitted for determination by the court.

not know the specific terms of the renewal negotiated by Mrotek and appellee as he had not been in contact with them between the time of the assignment and the institution of this action. Appellee's own exhibits accompanying his motion showed that negotiation prior to the renewal took place with Mrotek on issues such as maintenance, insurance and the amount of the new rental, which resulted in a rental increase of about 13 percent.[4] The testimony of assignee's president, Mrotek, not yet in this record, could well have an important bearing on the issues in this case.

It is true that the renewal, standing alone, did not discharge appellants' original liability on the lease. Where a lease contains a renewal clause that is enforceable against the lessor[5] and the renewal option is exercised by an assignee of the lessee, the lessee remains liable on his covenant to pay rent absent modifications resulting in a new lease. 32 Am.Jur. Landlord & Tenant §§ 358, 359, 362 (1941). See generally cases collected at 10 A.L.R.3d 812, 818 (1966). On the other hand, a lessor and assignee may, by entering into a direct leasing arrangement or by varying materially the terms of the original lease, establish a new tenancy relationship, thereby terminating the old. Gerber v. Pecht, 15 N.J. 29, 30, 104 A.2d 41, 42 (1954); 32 Am.Jur. Landlord & Tenant §§ 362, 363 (1941); and cf. Kaskel v. Hollander, 68 F.2d 265, 267 (1st Cir. 1933), where the court expressed doubt whether the obligations of the original lessee on a lease assigned during the original term would continue into a renewal term, which he did not request, and the rent for which was fixed by an agreement or arbitration in which he did not participate.[6]

All circumstances considered we think the case was not in a posture for the grant of summary judgment. There is present in the record a substantial question of fact as to whether a novation occurred at the time of the lease renewal, thereby releasing appellants from liability. While this may at times pose purely a question of law, 39 Am.Jur. Novation § 31 (1942), we conclude that this record leaves genuine factual issues to be resolved, with appellant having the burden of establishing that a novation occurred. In all probability the testimony of Mrotek, assignee's president, will become available during further proceedings.

Reversed and remanded for further proceedings.

---

4. A minor portion of this increase was due to increasing taxes. There was a formula in the original lease relating to this factor.

5. The renewal option in the instant case was enforceable against the lessor.

George Y. Worthington & Son Mgt. Corp. v. Levy, D.C.App., 204 A.2d 334 (1964).

6. While this statement in *Kaskel* is dictum, it is illuminating.