[No. 11996–6–I.   Division One.   September 23, 1985.]

HAN Z. PARK, ET AL, *Appellants,* v. ROSS EDWARDS, INC., ET AL, *Respondents.*

*Jones, Grey & Bayley, Richard A. Clark,* and *John J. Sullivan,* for appellants.

*Beresford, Booth, Baronsky & Trompeter, Richard R. Beresford,* and *Mark DeMaray,* for respondents.

CORBETT, C.J.—Dr. Han Z. Park and Regina Park appeal the trial court's judgment dismissing with prejudice their complaint for specific performance. We affirm and remand for the determination of attorney's fees.

Around July of 1979, Park contacted James R. Braun and James A. Smith regarding the purchase of a parcel of unimproved commercially zoned land located across the street from Park's home in Edmonds. Braun and Smith and their wives owned the land together. Ross Edwards, Inc., held the title in trust. Both Braun and Smith were in the real estate business.

In September 1980, Smith and Braun sent to Park a Real Estate Purchase and Sale Agreement and Addendum (EMA). Park made three changes to the addendum. The

first two changes were approved and initialed by both sides while the third change was not agreed to by Smith and Braun. This latter change stated: "Sellers guarrantee [sic] the condition of soil in existing filled area as to the build-ablility [sic] over the ground." Park stated that he would not be willing to purchase the land if there were no such provision.

The EMA provided that Park could begin work on the land before the deal closed. Around the second week of September 1980, Park's contractor began moving dirt from Park's property across the street, dumping it, and packing it on the land. The work continued until the end of November. Neither Smith nor Braun ever commented to Park about the dumping. In December 1980, when the deal still had not closed, Park wrote to Braun, desiring to resolve any problems.

On July 31, 1981, Park filed a complaint for specific performance, alleging breach of contract, unjust enrichment, violation of the Consumer Protection Act (RCW 19.86), and negligent and fraudulent misrepresentation. After a nonjury trial in May 1982, the trial court denied all of Park's claims and dismissed the complaint with prejudice, awarding costs to Smith and Braun.

Park assigns error to 7 of the trial court's 12 findings of fact.[1]

■ An appellate court will not substitute its judgment for that of the trial court if the trial court's findings are supported by substantial evidence. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 575, 343 P.2d 183 (1959); *St. Paul Fire & Marine Ins. Co. v. Updegrave*, 33 Wn. App. 653, 655, 656 P.2d 1130 (1983). More particularly,

---

[1]Park does not set out the findings of fact in the brief as required by RAP 10.4(c). Therefore, this court is not required to consider the claimed error. *Thomas v. French*, 99 Wn.2d 95, 100–01, 659 P.2d 1097 (1983) (failure to set out jury instructions). *See also In re Estate of Pfleghar*, 35 Wn. App. 844, 845 n.1, 670 P.2d 677 (1983), where the court stated that findings of fact not set out verbatim are treated as verities on appeal. However, the findings and conclusions are in the record, and because they are dispositive of the appeal, we will consider them.

[t]he scope of review on appeal is limited to determining whether the findings are supported by substantial evidence, and if so, whether the findings in turn support the trial court's conclusions of law and judgment. Substantial evidence is evidence of sufficient quantum to persuade a fair–minded person of the truth of the declared premise.

(Citations omitted.) *Brown v. Safeway Stores, Inc.,* 94 Wn.2d 359, 372–73, 617 P.2d 704 (1980).

Contrary to Park's contentions, we find that there is substantial evidence in the record to support the trial court's findings. First, the testimony at trial made it clear that neither Smith nor Braun ever consented to the type-written buildability provision which Park added to the EMA (finding of fact 6). Smith testified that Park was aware that neither he nor Braun approved the provision.

Second, there was absolutely no evidence that the actions of Smith and Braun during the negotiations for the sale of the land were anything but fair and proper (finding of fact 7). The fact that the two sellers were in the real estate business is no indication, as Park seems to imply, that they were overreaching.

Third, Park contests the amount and type of fill that the trial court found was dumped on the land (findings of fact 8 and 9). The testimony of the contractor whom Park hired to haul fill away from his property, as well as the testimony of a civil engineer specializing in soils foundation engineering, support these two findings.

Fourth, we find substantial evidence to support the finding that Park did not firmly believe he had the right to possess the land at the time his contractor was dumping fill material onto it (finding of fact 10). There was testimony that the dumping occurred from early September 1980 to early December 1980, while as late as January and February of 1981, Park was aware that the sale had not closed as is evidenced by letters which he wrote to Braun.

Finally, there is also substantial evidence that the fill material moved from Park's property to the land had no market value and was placed on the land solely for the

convenience of and at no cost to Park (finding of fact 12). Park's contractor testified that the fill which his company dumped on the land had been taken from Park's property, that it was overburden material, and that he was "happy to get a place to dump it." He also testified that the land was used to store salable fill from Park's property before it could be sold. Moreover, Park testified that he did not pay anything to get the fill from his property dumped on the land and that he needed someplace to put the fill before the contract with his contractor expired.

Park assigns error to five of the trial court's conclusions of law. However, we find that the court's findings, which are supported by substantial evidence, in turn support the court's conclusions of law. *See Brown,* at 373. The conclusions state, in pertinent part: that there was no contract between the parties because there was no meeting of the minds; that Smith and Braun did not engage in any unfair or deceptive acts in relation to the transaction; that there was no implied promise between the parties such that Park expected to be compensated for any improvement to the land; that Park's movement of fill material onto the land was officious and voluntary for which he suffered no damage; and that to the extent the value of the land was increased or Smith and Braun were enriched, there was no unjust enrichment (conclusions of law 4 through 8).

Park argues that he is entitled to the remedy of quantum meruit, asserting two bases for its application. Park first claims that there existed a contract implied in fact, that is

> an agreement depending for its existence on some act or conduct of the party sought to be charged and arising by implication from circumstances which, according to common understanding, show a mutual intention on the part of the parties to contract with each other. The services must be rendered under such circumstances as to indicate that the person rendering them expected to be paid therefor, and that the recipient expected, or should have expected, to pay for them.

*Eaton v. Engelcke Mfg.,* 37 Wn. App. 677, 680, 681 P.2d

1312 (1984) (quoting *Johnson v. Nasi,* 50 Wn.2d 87, 91, 309 P.2d 380 (1957)). This claim is without merit as the court found that there was no mutual intention by the parties to contract.

■ Second, Park claims that quantum meruit should be applied on the basis of a contract implied in law, *i.e.,* a quasi–contract. Recovery in quasi–contract is based on the prevention of unjust enrichment. *Eaton,* at 680. This claim is also without merit as the court specifically concluded that to the extent Smith and Braun were enriched, they were not unjustly enriched.

Smith and Braun ask for attorney's fees pursuant to RCW 4.84.330, as interpreted by *Herzog Aluminum, Inc. v. General Am. Window Corp.,* 39 Wn. App. 188, 692 P.2d 867 (1984). RCW 4.84.330 provides in pertinent part:

> In any action on a contract or lease entered into after September 21, 1977, where such contract or lease specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or lease or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements.

The issue in *Herzog* was whether a defendant who successfully defends a breach of contract lawsuit, by proving there was no enforceable contract, is entitled to attorney's fees on the basis of RCW 4.84.330 and on the basis of the purported contract which would have allowed attorney's fees to the plaintiff. *Herzog,* at 189–90. *Herzog* concluded that "the broad language '[i]n any action on a contract' found in RCW 4.84.330 encompasses any action in which it is alleged that a person is liable on a contract." *Herzog,* at 197. The court thus allowed the defendant in the case its reasonable attorney's fees incurred at trial.

■ While RCW 4.84.330 specifically applies to contracts with unilateral attorney's fees provisions and the attorney's

fee provision in this EMA was bilateral,[2] *Herzog* interpreted the statute to provide for attorney's fees in actions on a contract when no contract is found to exist. Certainly it makes little sense to allow a defendant who successfully defends a suit for specific performance by proving the absence of a contract to collect attorney's fees only if the purported contract included a unilateral attorney's fee provision but not if it included a bilateral provision. Such a result accomplishes what both *Herzog* and the statute seek to avoid. Accordingly, Smith and Braun are awarded reasonable attorney's fees. We decline to award sanctions as requested by Smith and Braun pursuant to RAP 18.9(a).

The cause is remanded to the trial court to fix the judgment for attorney's fees at trial and on appeal.

The judgment is otherwise affirmed.

SCHOLFIELD and WEBSTER, JJ., concur.

Review denied by Supreme Court November 22, 1985.

---

[2]The provision in the EMA provides in part:

"In the event that either the Buyer, Seller, or Agent, shall institute suit to enforce any rights hereunder, the successful party shall be entitled to court costs and a reasonable attorney's fee."