[No. 7949–0–III.   Division Three.   December 17, 1987.]

JOHN P. GLESENER, *Appellant*, v. H. L. BALHOLM,
ET AL, *Respondents*.

2

*Thomas Nagle* and *Roy & Pell,* for appellant.

*Frank Devine,* for respondents.

THOMPSON, J.—This case involves H. L. Balholm and wife, assignors of a lease, and John P. Glesener and wife, lessors.[1] Mr. Glesener sued the Balholms for acts of the Balholms' assignee, Jim Miller. The acts complained of occurred after the lease term had expired, during the time when the Gleseners and Mr. Miller were negotiating an extension of possession. The trial court granted the Balholms' motion for summary judgment. We affirm.

On May 28, 1980 the Balholms entered into an agreement with the Gleseners to lease property located in Yakima, to be used as a laundromat. The 5-year lease was to expire on June 30, 1985. On July 3, 1980, with the Gleseners' consent, the lease was assigned to Jim Miller, who purchased the Balholms' laundromat business. The consent specifically reserved any rights the lessors had against the Balholms under the terms of the lease agreement.

Thereafter, Mr. Miller occupied the premises and ran the laundromat business. A dispute arose over delinquent rent

---

[1]Mrs. Glesener died prior to commencement of this action.

and taxes during the last few months of the lease. In a series of letters and telephone calls between June 4 and July 19, 1985, Mr. Miller made known his intent to renew the lease. The Gleseners, on the other hand, took the position Mr. Miller was not entitled to renewal. Though renewal of the lease appeared out of the question, the Gleseners and Mr. Miller were near agreement to allow Mr. Miller to remain in possession of the property until November 1985. However, the dispute over taxes and rent continued.

Around July 26, 1985, Mr. Miller vacated the premises and allegedly caused $7,000 worth of damage to the building when he removed his fixtures. The Balholms were not involved with Mr. Miller's actions, nor were they aware of the dispute over taxes and rent or the communications between the Gleseners and Mr. Miller.

Mr. Glesener sued both Mr. Miller and the Balholms, contending the Balholms, as assignors, were liable for the damaged premises based on the lease repair clause and the reservation contained in the consent to assignment. An arbitrator originally decided the case under MAR 1.2, dismissing the claim against the Balholms, and awarding them $750 attorney fees. The arbitrator ruled in favor of Mr. Glesener on his claim against Jim Miller.

Mr. Glesener requested a trial de novo pursuant to MAR 7.1. The court granted the Balholms' motion for summary judgment and dismissed Mr. Glesener's claim. The court ruled as a matter of law that Mr. Miller and the Gleseners entered into a new relationship after the expiration of the original lease, and thus the Balholms were not liable for damage to the premises.

Judgment on the motion was entered June 6, 1986, and attorney fees were awarded to the Balholms against Mr. Glesener. Later, a supplemental order was filed listing that which was considered by the court in granting the Balholms' motion. Mr. Glesener appeals.

The first issue is whether the trial court considered the affidavit of attorney Ted Roy in granting summary judgment. Mr. Glesener had attempted to show the existence of a material issue of fact through the affidavit of his attorney, Ted Roy. Mr. Glesener notes the supplemental order to the order granting summary judgment does not list Ted Roy's affidavit and three attached letters. He contends the trial court has a duty to consider all material evidence properly before it. However, Mr. Glesener cites no case, nor did we find one, which would require reversal for a faulty listing of evidence considered by the trial court, contained in a supplemental order. Mr. Glesener did not attempt to cure the supplemental order's alleged inadequacy as allowed under RAP 9.12, or direct the trial court's attention to it.

Additionally, we note the court did consider Mr. Roy's affidavit. In its order granting summary judgment, the court made direct mention of the correspondence between the parties' attorneys, characterized by the court as negotiations. The correspondence was attached to and incorporated by reference in Mr. Roy's affidavit. Aside from an objection to Mr. Devine's affidavit and inadmissible legal conclusions and arguments, the letters appear to be the sole subject of Mr. Roy's affidavit. It is clear the court considered the letters; since they are referred to in the order, they may be considered on appeal. RAP 9.12.

■ The second issue is whether Mr. Frank Devine's affidavit is inadequate in that it does not affirmatively demonstrate the basis of his knowledge and consists of mere legal conclusions. Mr. Devine, the Balholms' attorney, submitted an affidavit similar to Mr. Roy's in support of the Balholms' motion for summary judgment. An attorney's affidavit is entitled to the same consideration as any other affidavit based on testimonial knowledge. *American Linen Supply Co. v. Nursing Home Bldg. Corp.*, 15 Wn. App. 757, 763, 551 P.2d 1038 (1976). Legal conclusions and other surplusage in affidavits are to be disregarded, but the rest of the affidavit may properly be considered. *Henry v. St. Regis*

*Paper Co.,* 55 Wn.2d 148, 151, 346 P.2d 692 (1959); *American Linen,* at 763.

Here, Mr. Devine's affidavit was used to introduce certain documents and contained arguments designed to put a certain "spin" to the documents. When the legal conclusions and inadmissible arguments are excised, there remains ample admissible evidence to support the trial court's decision as to the legal effect of the parties' exchange of letters.

Nor was there a need for Mr. Devine to aver a basis for his personal knowledge. He was Mr. Miller's attorney at the time of the "negotiations" and wrote two of the three letters in question and was the recipient of the third.

The third and key issue is whether the trial court correctly decided, as a matter of law, that the Balholms, as assignors of the lease, were not liable for damages to the leased premises by their assignee, Mr. Miller. It is generally true that where a lease contains a renewal clause, and the renewal option is exercised by an assignee of the lessee, the lessee remains liable on his lease covenants absent modifications resulting in a new lease. *See Kornblum v. Henry E. Mangels Co.,* 167 So. 2d 16, 10 A.L.R.3d 812 (Fla. Dist. Ct. App. 1964); *Groner v. Dryer,* 256 A.2d 559 (D.C. 1969). *See generally* Annot., *Liability of Lessee Who Assigns Lease for Rent Accruing Subsequently to Extension or Renewal of Term,* 10 A.L.R.3d 818 (1966). However, the lessor and assignee may establish a new tenancy relationship and thereby terminate the old, either by entering into a direct leasing arrangement or varying materially the terms of the original lease. *Groner,* at 562; *Meredith v. Dardarian,* 83 Cal. App. 3d 248, 147 Cal. Rptr. 761, 764–65 (1978); 1 *American Law of Property* § 3.61, at 311 (A. Casner ed. 1952). *Cf. Kaskel v. Hollander,* 68 F.2d 265, 267 (1st Cir. 1933) (new agreement with assignee for renewal). When such new tenancy relationship is established, the assignor is no longer liable.

Here, the lease between the Gleseners and the Balholms contained an option–to–renew clause which specified the lessee could, at their option, "renew and extend this lease

for a further period of five (5) years from the expiration hereof . . . provided however, that Lessee gives written notice of his intention to renew said lease at least 60 days prior to the expiration hereof." The affidavits and letters before the trial court indicate Mr. Miller notified the Gleseners on June 10, 1985, that he intended to exercise this right to renew; the notice was 40 days late. The Gleseners' attorney made clear in his reply to this letter that he was taking the position Mr. Miller had breached the terms of the lease with regard to taxes and rental payments and was thus not entitled to renew. However, the same letter made an offer to allow Mr. Miller to remain in possession until November 1, 1985, conditioned on timely payment of rent and taxes. Mr. Miller's reply indicates the dispute over the conditions attached to the extension of possession was still not resolved. It is these letters which the trial court held as a matter of law indicated a new relationship not involving the Balholms was being negotiated.

Mr. Glesener argues alternatively, first, that Mr. Miller was improperly holding over and, as a holdover tenant, is still liable under the original lease. Thus, there being no new lease agreement between assignee Mr. Miller and lessors, the Gleseners, the assignors' liability is extended under privity of contract for the assignees' damage to the property, Restatement (Second) of Property § 14.7 (1977); and second, Mr. Miller exercised the option to renew and thus was occupying under the terms of the Glesener/Balholm lease, thereby continuing the Balholms' contractual liability.

As to the second contention, this was not his position at the time the letters were exchanged between the Gleseners and the assignee, Mr. Miller. *Wharf Restaurant, Inc. v. Port of Seattle,* 24 Wn. App. 601, 605 P.2d 334 (1979), cited by Mr. Glesener to support the option renewal argument, is not applicable. Mr. Glesener had every right to refuse to renew under the option clause for breach of lease covenants or uncertain rental payments. *Hindquarter Corp. v. Property Dev. Corp.,* 95 Wn.2d 809, 631 P.2d 923, 23 A.L.R.4th

897 (1981); *Henry v. Bruhn & Henry, Inc.*, 110 Wash. 321, 188 P. 506 (1920). Also, in their respective letters, both parties distinguished between the option to renew and agreeing to possession until November.

As to the first contention regarding improper holdover, the letters indicate negotiations continued from at least June 10, 1985, past the expiration of the lease term on June 30, 1985, until at least July 19, 1985. There was no "improper" holding over.

The case really turns on whether the trial court properly decided that a new relationship, created by the conduct of Mr. Glesener and Mr. Miller as exemplified by the attorneys' letters, took effect after the lease expired and thereby left the Balholms with no contract liability for any damage to the leasehold committed during that later period. (No damage occurred prior to June 30, 1985, the date the lease term ended.)

■ A summary judgment motion should be granted only if the pleadings, affidavits, depositions, and admissions on file demonstrate there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Wilson v. Steinbach*, 98 Wn.2d 434, 656 P.2d 1030 (1982). The burden is on the moving party to show there is no genuine issue of material fact. *Hartley v. State*, 103 Wn.2d 768, 698 P.2d 77 (1985). All reasonable inferences from the evidence must be resolved in favor of the nonmoving party. *Morris v. McNicol*, 83 Wn.2d 491, 519 P.2d 7 (1974). If a contract, or lease provision, is unambiguous, summary judgment is proper even if there are differences between the parties as to the legal effect of the provision. *Greer v. Northwestern Nat'l Ins. Co.*, 36 Wn. App. 330, 674 P.2d 1257 (1984).

Here, there were no material issues of fact in dispute. The only disputes were over the *legal effect* of the offers and counteroffers contained in the letters and the *legal effect* of the consent to assignment provision in the lease. The trial court could decide these issues as a matter of law. It is evident the letters did not operate to renew or extend

the lease, under the option clause. At best, a new agreement was created by the negotiations allowing for some form of tenancy, either month to month or at will. As noted, such a new tenancy agreement terminates the assignor's contract liability.

The damage occurred here after the lease had expired and during a period covered by a separate tenancy relationship between the Gleseners and Mr. Miller. The trial court did not err in granting summary judgment dismissing the Balholms.

The final issue is whether the trial court properly awarded attorney fees to the Balholms. The original lease agreement provided:

> It is agreed that in any suit or action based upon this Lease Agreement the prevailing party may recover reasonable attorneys fees against the other party.

The arbitrator awarded the Balholms $750 attorney fees against Mr. Glesener, apparently based on this provision. However, the trial court felt because the lease was at an end, its provisions did not apply to the relationship between Mr. Glesener and the Balholms and could not be the basis for awarding attorney fees. Therefore, the court did not award attorney fees under the lease, but based on MAR 7.3 instead.[2]

■■ The trial court could have awarded the fees under the lease. RCW 4.84.330 provides, in pertinent part:

> In any action on a contract *or lease* entered into after September 21, 1977, where such contract *or lease* specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract *or lease,* shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the

---

[2] MAR 7.3:

"COSTS AND ATTORNEY FEES

"The court shall assess costs and reasonable attorney fees against a party who appeals the award and fails to improve the party's position on the trial de novo. The court may assess costs and reasonable attorney fees against a party who voluntarily withdraws a request for a trial de novo."

contract *or lease* or not, *shall be entitled* to reasonable attorney's fees in addition to costs and necessary disbursements.

(Italics ours.) *Herzog Aluminum, Inc. v. General Am. Window Corp.,* 39 Wn. App. 188, 692 P.2d 867 (1984) held the statute applies in an action on a contract even when the court finds no contract exists, and a defendant who prevails can be awarded fees under the contract provision. *See also Western Stud Welding, Inc. v. Omark Indus., Inc.,* 43 Wn. App. 293, 296, 716 P.2d 959 (1986); *Park v. Ross Edwards, Inc.,* 41 Wn. App. 833, 838, 706 P.2d 1097 (1985). Mr. Glesener sued the Balholms to enforce the lease, and liability under the lease was the central issue. The Balholms prevailed. Even though the trial court awarded fees under MAR 7.3, a correct judgment will not be reversed when it can be sustained on any theory. *Haberman v. Elledge,* 42 Wn. App. 744, 748, 713 P.2d 746 (1986). Thus, we need not decide whether the trial court properly awarded fees under MAR 7.3, because the Balholms were entitled to reasonable attorney fees under the statute based on the lease provision. The record supports the trial court's determination of the amount of those fees.

As to attorney fees on appeal, we note the Balholms' counsel has filed an affidavit adequately detailing expenses incurred and services performed on appeal, but failed to comply with the mention of fees in his brief or at oral argument as required by RAP 18.1(b) and (d). We may waive strict compliance, when to do otherwise would cause a hardship not warranted by the infraction. RAP 1.2; *Effert v. Kalup,* 45 Wn. App. 12, 18 n.2, 723 P.2d 541 (1986). We will allow attorney fees on appeal in the amount of $1,237.50 as requested and as agreed in the lease, but impose sanctions of $300 against the Balholms' attorney for failure to comply with the rules on appeal. Said sanctions are to be paid when the Balholms are paid the fees awarded in this decision.

We affirm the summary judgment and the award of attorney fees.

McINTURFF, C.J., and GREEN, J., concur.