[No. 11540-9-II.   Division Two.   November 9, 1989.]

H. CLARKE SWANSON, *Appellant,* v. LIQUID AIR CORPORATION, *Respondent.*

918

*Jerome F. McCarthy* and *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim,* for appellant.

*Alan B. Bornstein, Henry C. Jameson,* and *Ferguson & Burdell,* for respondent.

PETRICH, J.—Clarke Swanson appeals from a summary judgment dismissing his action for wrongful discharge against his employer, Liquid Air Corporation. We reverse.

Swanson worked as a truck driver for Liquid Air from December 1983 to February 1986. He was discharged on the latter date for fighting on company premises.

Soon after being employed by Liquid Air, Swanson received an employee benefits manual. That manual contained a disclaimer statement that provided as follows:

### DISCLAIMER STATEMENT

The Company may revise or discontinue policies, procedures or benefits described in this handbook, and/or institute new policies, procedures or benefits. Neither this handbook nor any other Company policies, procedures or practices (whether verbal or written) or the acceptance or continuance of employment is to be construed as a contract of employment (which can only be authorized by the President or Executive Vice–President), a promise of continued employment, or as creating an implied or contractual duty between an employee and the Company. To the contrary, all employment can be terminated by the employee or by the Company for reasons which either the employee or the Company, as the case may be, considers sufficient.

Despite the language of the disclaimer, Swanson argues that his discharge violated the terms of an employment agreement that he would receive a warning before being discharged for misconduct. The employment agreement

Swanson relies on is contained in a memorandum of working conditions that was distributed to Liquid Air truck drivers at the Kent, Washington, plant in February 1985. Three management members from the corporate headquarters in San Francisco, California, met with the truck drivers for 2 days. During the meeting, the memorandum of working conditions was discussed at length. It contained provisions on a variety of topics, including seniority, work hours, and vacation time. It also included a provision that stated as follows:

### WORK RIGHTS
Dishonesty, drinking or use of drugs on duty, recklessness resulting in an accident, or the carrying of unauthorized passengers shall be deemed sufficient and proper cause for discharge without prior notice. *In all other instances of misconduct, at least one warning, shall be given.* A new employee shall be on a ninety (90) day trial basis, during which period he may be discharged without prior notice.

(Italics ours.)

Swanson stated in his affidavit that the manager of labor relations told the truck drivers that the memorandum "'was written specifically for you group of drivers because you are not under a union contract'" and "'[w]e want to attract good people and we want to keep good people.'"

Two other meetings were held at which the memorandum of working conditions was discussed. In August 1985, management members met with the truck drivers as a result of an intention of the drivers to seek representation from Teamsters Local 174. According to Swanson, the manager of labor relations reiterated that the "company would abide by the rules in the agreement and that no union representation would be necessary." The third meeting was held in November 1985 and the manager of labor relations stated that the work rights would remain in effect as they had been.

A driver's handbook was also distributed at the February 1985 meeting. Under the safety rules section, the booklet stated "[f]ighting, disorderly conduct and horseplay are prohibited."

In February 1986, Swanson had an argument with another driver, Bruce Lang, and a physical altercation resulted. Lang shoved Swanson from the behind. Swanson turned and faced Lang. Because he felt physically threatened, Swanson applied a choke hold on Lang, a maneuver he had learned as a police officer, and then told Lang to leave. Swanson immediately reported the incident to his supervisor. Swanson was fired as a result of the incident. His termination letter stated that "[f]ighting on company property is in violation of company policy and rules."

Swanson alleged in his complaint against Liquid Air that he was discharged "without prior notice, for reasons other than reasons for which [Liquid Air] had reserved the right to terminate, without prior notice." The trial court dismissed Swanson's claim based on the disclaimer in the employee benefits manual and on the court's view that fighting constitutes adequate grounds for discharge.

■ Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). In reviewing a summary judgment, this court engages in the same inquiry as the trial court. *Del Guzzi Constr. Co. v. Global Northwest Ltd.*, 105 Wn.2d 878, 882, 719 P.2d 120 (1986). The moving party has the burden of showing by uncontroverted facts that there is no remaining genuine issue of fact that could influence the outcome of trial. *LaPlante v. State*, 85 Wn.2d 154, 158, 531 P.2d 299 (1975). Once that burden has been met, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *LaPlante*, 85 Wn.2d at 158. All reasonable inferences must be resolved in favor of the nonmoving party. *Glesener v. Balholm*, 50 Wn. App. 1, 7, 747 P.2d 475 (1987).

Swanson argues that Liquid Air modified its at will employment contract with him by adopting the work rights

provision contained in the memorandum of working conditions. Therefore, he argues that the provision required Liquid Air to give him a warning before discharging him on the basis of fighting. Liquid Air argues that the work rights provision did not modify the at will employment contract because of the disclaimer in the employee benefits manual.

■ The general rule is that an employment contract indefinite in duration may be terminated at any time by the employee or the employer, with or without cause. *Stewart v. Chevron Chem. Co.*, 111 Wn.2d 609, 611, 762 P.2d 1143 (1988); *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 223, 685 P.2d 1081 (1984). The Supreme Court carved an exception to the employment at will rule in *Thompson v. St. Regis Paper Co., supra.* The court held that an employer's promises of specific treatment in specific situations found in employee manuals or handbooks may obligate the employer to act in accord with those promises. *Thompson*, 102 Wn.2d at 233. The *Thompson* court stated:

> It would appear that employers expect, if not demand, that their employees abide by the policies expressed in such manuals. This may create an atmosphere where employees *justifiably rely* on the expressed policies and, thus, justifiably expect that the employers will do the same. . . .
>
> Therefore, we hold that if an employer, for whatever reason, creates an atmosphere of job security and fair treatment with promises *of specific treatment in specific situations* and an employee is induced thereby to remain on the job and not actively seek other employment, those promises are enforceable components of the employment relationship.

102 Wn.2d at 230.

In this case, the work rights provision in the memorandum of working conditions promised specific treatment in specific situations. Under the work rights provision, certain specified kinds of misconduct would result in discharge without prior notice. In instances of other unspecified kinds of misconduct, at least one warning was to be given.

Liquid Air argues that Swanson was warned against fighting by virtue of the express prohibition against fighting

in the driver's handbook. We disagree. The work rights provision must be read in its entirety, giving sense to each of its provisions. The language "without prior notice" and "at least one warning" must be read together to make sense. These terms are meaningless if the requirement of a warning is satisfied by a description of prohibited misconduct contained in a separate document, such as that contained in the driver's handbook.

The *Thompson* court recognized that an employer may preclude its policies from being interpreted as modifications of the employment at will relationship. The court stated that employers may "specifically state in a conspicuous manner that nothing contained therein is intended to be part of the employment relationship and are simply general statements of company policy." *Thompson*, 102 Wn.2d at 230. While the facts in *Thompson* did not involve a disclaimer, the court recognized that whether an employee justifiably relies on promises contained in employee manuals or handbooks is a question of fact. 102 Wn.2d at 233.

In our judgment Swanson raised a genuine issue of material fact concerning whether he justifiably relied on the promises of specific treatment in specific situations contained in the memorandum of working conditions. Viewing the evidence in a light most favorable to Swanson, as we must on summary judgment, high ranking officials from corporate headquarters met with the Kent facility truck drivers to discuss the memorandum of working conditions, including the work rights provision. The memorandum was issued in an attempt to persuade the truck drivers against seeking union representation. The Liquid Air officials represented to the truck drivers the company's intention to be bound by the terms of the memorandum.

The trial court based its decision in part on the rule that employees have an implied obligation to properly perform their work. In *McIntyre v. Fort Vancouver Plywood Co.*, 24 Wn. App. 120, 129, 600 P.2d 619 (1979), the court stated that "[a]n employee's neglect of duty of a substantial character or misconduct which might injuriously affect the

employer's business regardless of an express agreement on the subject, constitutes good grounds for discharging the employee." *McIntyre,* 24 Wn. App. at 129–30.

In *McIntyre,* the court upheld the employer's termination of the plaintiff. However, *McIntyre* was not decided on summary judgment. Rather, the court had the benefit of the testimony of several witnesses and evidence of warnings given to the employee concerning his poor work performance. We agree that fighting on company premises may be a neglect of duty or misconduct worthy of discharge without prior warning regardless of statements of company policy. However, whether Swanson's actions in this case rose to that level of misconduct is a question for the trier of fact to be decided upon all of the evidence.

Having concluded that Swanson raised genuine issues of material fact to defeat Liquid Air's motion for summary judgment, we reverse the decision of the trial court dismissing Swanson's claim and remand for further proceedings.

ALEXANDER, C.J., and WORSWICK, J., concur.

Remanded to the Court of Appeals at 114 Wn.2d 1008 (1990).

Opinion adhered to on reconsideration May 23, 1990.