[No. 28355-3-I.   Division One.   July 27, 1992.]

TRUCK CENTER CORPORATION, *Appellant,* v. GENERAL MOTORS CORPORATION, ET AL, *Respondents.*

---

*Gary W. East,* for appellant.

*John Dillow, Rex C. Browning,* and *Perkins Coie,* for respondents.

AGID, J. — Truck Center Corporation (Truck Center) appeals the trial court's dismissal of its breach of contract claim against General Motors Corporation (GM) on summary judgment. We affirm.

## I
### FACTS

This appeal concerns the interpretation of a dealer sales and service agreement (Dealer Agreement) entered into by Truck Center and GM, pursuant to which Truck Center became an authorized GM dealer in 1978. In 1985 the parties renewed the Dealer Agreement. Under the terms of the Dealer Agreement and various addenda, Truck Center was granted a nonexclusive right to buy, sell and service speci-

fied GM light duty, medium duty and heavy duty trucks and related parts and accessories.

On December 23, 1986, GM notified Truck Center by letter that it had entered into a joint venture with AB Volvo. The joint venture, Volvo GM Heavy Truck Corporation (Volvo GM), would manufacture and distribute heavy duty trucks (HDT's) in North America. GM notified Truck Center that, as a result of the joint venture, it would cease offering HDT products to its dealers on December 31, 1987, and the heavy duty motor vehicle addendum, in which GM agreed to supply HDT products to Truck Center, would expire on that date. The letter also stated that the joint venture was in the process of determining which existing dealers would be selected to distribute the HDT products of Volvo GM. In June 1987, GM notified Truck Center that it had not been selected as a dealer for Volvo GM HDT products.[1] Truck Center's area competitor, Trucks Northwest Corporation (Trucks Northwest), was selected to be the area's Volvo GM dealership.

GM decided to stop manufacturing and marketing HDT products for sale to its dealers primarily because its market share had decreased and it was incurring substantial operating losses. The HDT business had become increasingly unprofitable for GM for several reasons, including decreased demand, industry deregulation, and growing foreign competition. Rather than liquidate its HDT assets, GM entered into the joint venture with AB Volvo. In exchange for a minority, noncontrolling (24 percent) interest in Volvo GM, GM contributed cash and its inventory of HDT parts and accessories, as well as its manufacturing and tooling assets. The remaining 76 percent of Volvo GM's stock is owned by Volvo. Of the 10 members of Volvo GM's board of directors, 7 are designated by Volvo and 3 are designated by GM. None of GM's board members sits on Volvo GM's board of directors.

---

[1] However, the letter explained that GM was only canceling the HDT motor vehicle addendum. The Dealer Agreement for the light duty and medium duty products supplied by GM to Truck Center would remain in effect. Thus, GM did not cancel its Dealer Agreement with Truck Center.

In anticipation of its withdrawal from the HDT market, GM dismantled all of its planning, marketing and sales departments for HDT models. It also ceased its engineering, cost estimating, development planning, warranty support and advertising associated with HDT's and terminated its relationships with numerous suppliers.

In December 1987, GM discontinued its sales of HDT products to Truck Center and other GM dealers. With one exception, GM also stopped manufacturing HDT's after December 31, 1987. Between December 1987 and December 1988, it did continue to manufacture the Brigadier model of HDT's. Under its agreement with Volvo, GM was obligated to manufacture the Brigadier exclusively for Volvo GM. Volvo GM marketed and distributed the Brigadier, under the nameplate of WhiteGMC, solely to its dealer network. As with the other HDT models formerly marketed by GM, the Brigadier was not available for sale to any of the GM dealers. According to GM, it was essentially manufacturing the Brigadier as a subcontractor for another manufacturer, Volvo GM.

After December 31, 1987, HDT parts and accessories were no longer listed by GM for sale to dealers on the dealer parts and accessories price schedules. However, GM continued to manufacture some of these parts for sale to entities other than its dealers after December 31, 1987, accepting work as a contract manufacturer or assembler of parts and components.

After GM canceled the HDT addendum to the Dealer Agreement, Truck Center filed suit against Volvo White Truck Corporation, a subsidiary of AB Volvo, GM, Volvo GM, and Trucks Northwest, the local Volvo GM dealer.[2] The trial court dismissed four of the five counts of plaintiff's complaint against GM. GM moved for summary judgment on the remaining breach of contract claim, which the trial

---

[2]Truck Center's claims against Volvo GM and Volvo White Truck Corporation were subsequently dismissed.

court granted. Truck Center appeals the trial court's dismissal of that claim.

## II

### DISCUSSION

Truck Center contends that GM breached its Dealer Agreement when it stopped selling HDT products, including trucks and related parts and accessories, to Truck Center while allegedly continuing to manufacture some of those products for sale to Truck Center's competitors. Because Truck Center's claim was dismissed on summary judgment, all reasonable inferences from the evidence must be drawn in its favor. *Glesener v. Balholm*, 50 Wn. App. 1, 7, 747 P.2d 475 (1987). Summary judgment ·is appropriate only when the pleadings, affidavits, depositions and admissions on file show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Wilson v. Steinbach*, 98 Wn.2d 434, 656 P.2d 1030 (1982); *Glesener*, 50 Wn. App. at 7. When the contract provisions at issue are unambiguous, the court's interpretation of the contract is a question of law which may be decided on summary judgment. *Glesener*, 50 Wn. App. at 7. Here, both parties agree that the resolution of Truck Center's breach of contract claim depends solely on this court's interpretation of certain provisions of the Dealer Agreement.

The Dealer Agreement is divided into several articles. It governs sales to dealers, sales and service performance by the dealer, GM's termination of dealerships, and the legal relationship of the parties. Section 1.5 of article 1, Sales to Dealers, provides in pertinent part:

> General Motors may discontinue any Product at any time and its only obligation shall be to manufacture and deliver to Dealer accepted orders which Dealer does not elect to cancel.

Truck Center argues that the term "discontinue" in section 1.5 means the cessation of manufacturing *and* marketing of products by GM. Truck Center believes that, since GM continued to manufacture, at a minimum, the Brigadier for Volvo GM after it discontinued its sales of all HDT products

to Truck Center, and continues to manufacture HDT parts and accessories for entities other than GM dealers, it has not "discontinued" those products for purposes of section 1.5. By contrast, GM interprets the term "discontinue" to mean only that GM has stopped marketing and distributing a product for sale to its dealers. Our review of the relevant contract provisions compels us to adopt GM's interpretation.

■ The Dealer Agreement must be interpreted in accordance with Michigan rules of construction.[3] It is a cardinal principal of construction that a contract is to be construed as a whole and all of its parts are to be harmonized when reasonably possible. *Truck Lines, Inc. v. Baer*, 346 Mich. 106, 110, 77 N.W.2d 384, 386 (1956). Only when the terms of a contract are so ambiguous that the parties' intent cannot be understood merely from examining the written document is extrinsic evidence admissible to show the intent of the parties at the time they entered into the contract.[4] *Glenwood Shopping Ctr. Ltd. Partnership v. K mart Corp.*, 136 Mich. App. 90, 99, 356 N.W.2d 281, 286 (1984); *Goodwin, Inc. v. Orson E. Coe Pontiac, Inc.*, 392 Mich. 195, 209-10, 220 N.W.2d 664, 671, *aff'd in part, vacated in part, and remanded on rehearing*, 224 N.W.2d 53 (1974). The interpretation of unambiguous contract provisions is a question of law. *Beason v. Beason*, 435 Mich. 791, 798 n.3, 460 N.W.2d 207, 210 (1990).

■ Under the Dealer Agreement, Truck Center has the nonexclusive right to "buy the new GMC Truck motor vehicles identified in the Motor Vehicle Addend[a] hereto and

---

[3]The Dealer Agreement provides in section 7.9 that "[t]his Agreement is governed by the laws of the State of Michigan." The courts will enforce an express choice of law clause in a contract as long as application of the chosen law does not violate the forum state's fundamental public policy. *McGill v. Hill*, 31 Wn. App. 542, 547, 644 P.2d 680 (1982). Neither party contends that Washington law should be applied to determine the merits of plaintiff's claim, and no public policy is violated by application of Michigan law.

[4]With respect to the admissibility of extrinsic evidence in breach of contract cases, Washington law differs from Michigan law. Under *Berg v. Hudesman*, 115 Wn.2d 657, 801 P.2d 222 (1990), extrinsic evidence is admissible as an aid to ascertaining the parties' intent even when the contract language is unambiguous.

related Parts and Accessories". Each motor vehicle addendum lists the vehicle models available for purchase for a particular class of vehicle. The HDT motor vehicle addendum states that the authorized dealer may purchase "Heavy Duty Truck Motor Vehicles marketed by GMC", and lists three models available to the dealer for purchase. The addendum further provides that it "shall remain in effect unless cancelled or until superseded by a new motor vehicle addendum". Under this provision, GM had the right to cancel the HDT motor vehicle addendum and/or unilaterally change the vehicle models listed on the addendum at any time. Given this right, GM has no contractual obligation to continue to offer its dealers any particular line of vehicles. Therefore, Truck Center's claim that GM breached the Dealer Agreement by discontinuing the sale of the Brigadier to Truck Center must fail.

Truck Center also contends that GM was obligated to continue selling HDT parts and accessories to Truck Center under the Dealer Agreement. As noted above, however, GM was only required to offer for sale to its dealers those motor vehicles identified in the motor vehicle addenda "and related Parts and Accessories". Because GM can unilaterally decide to discontinue selling any HDT model listed in the HDT motor vehicle addendum, it follows that it can also discontinue those parts and accessories related to the HDT models it has chosen to discontinue for sale to its dealers.

The contractual provisions dealing with "Parts and Accessories" lend further support to this conclusion. Section 1.5 states that GM may discontinue any "Product" at any time. The contract defines "Products" as "Motor Vehicles, Parts and Accessories." "Parts and Accessories" are defined as:

> New or remanufactured automotive parts and accessories *marketed* by General Motors and *listed in current Dealer Parts and Accessories Price Schedules* or supplements thereto furnished to Dealer.

(Italics ours.) Under these definitions, GM has the right to discontinue any product that it is no longer marketing or that is no longer listed in its parts and accessories price

schedules. Put another way, GM is contractually obligated to sell to its dealers only those parts or accessories that GM chooses to market and that are listed in the parts and accessories price schedules.

In this case, neither of these preconditions is met. Truck Center does not dispute that GM removed HDT parts and accessories from its price schedules as of December 1987. Truck Center asserts, however, that GM continues to market GM's HDT products through Volvo GM and that joint venture's dealer network. This assertion is not supported by the evidence. The evidence establishes that when GM entered into the joint venture with Volvo, the GM HDT business ceased to exist. GM dismantled its planning, sales and marketing HDT product departments. The joint venture took over responsibility for all marketing aspects of the HDT business, including pricing and selecting dealerships. Further, Volvo GM's HDT products were not distributed under the GM nameplate. Rather, they were marketed under the name of WhiteGMC as products of Volvo GM. Finally, GM has only a minority interest in Volvo GM; it does not control the operations of the company. Thus, we cannot conclude that GM continues to market HDT products under the guise of Volvo GM.[5]

Truck Center finally contends that GM's interpretation of its rights under the contract is unreasonable because allowing GM to discontinue HDT products precludes Truck

---

[5]GM urges us to rely on another provision of the Dealer Agreement, section 1.4, for the proposition that it has the contractual right to stop selling products it no longer markets to its dealers. Section 1.4 states, in pertinent part:

**1.4 Excusable Delay or Failure to Fill Orders or Accept Deliveries**
    Dealer will not be liable for any delay or failure to accept delivery and General Motors will not be liable for any delay or failure to deliver Products where such delay or failure is caused, in whole or in part, by:
        . . . .
        4) any curtailment of production due to economic conditions, *or any discontinuance of manufacture **or sale** by General Motors*[.]
(Italics ours.) Because section 1.4 applies only to orders that GM failed to fill, and technically no order was placed that GM refused to fill, we do not rely on this contractual provision.

Center from fulfilling one of its obligations under the Dealer Agreement. Section 2.4.3(c) provides:

**(c) Inventory of Parts and Accessories**
Dealer will stock sufficient Parts and Accessories to meet customer demand and to perform warranty repairs and special policy adjustments.

Since GM discontinued the sale of HDT parts to its dealers, Truck Center has been forced to buy those parts from Trucks Northwest, a Volvo GM dealer, in order to service HDT's it sold to its customers before those parts were discontinued. Because Truck Center must pay retail prices for HDT parts, its profits from sales of such parts have significantly declined. Although this seems fundamentally unfair, the contractual provisions discussed above clearly allow GM to discontinue HDT parts and accessories, and we cannot rewrite the contract for the parties.

In summary, while the Dealer Agreement provides that Truck Center may purchase the vehicles identified in the motor vehicle addenda, it also gives GM the right to unilaterally cancel or supersede its motor vehicle addenda at any time. Thus, by canceling or superseding its HDT motor vehicle addendum, GM can cease offering HDT models to its dealers and can discontinue sales of related parts and accessories as well. Further, the Dealer Agreement allows GM to discontinue offering to its dealers parts and accessories which GM no longer markets and which have been removed from GM's price schedules. Because there is no factual basis for Truck Center's contention that GM continues to market HDT parts and accessories, GM did not breach the Dealer Agreement in discontinuing the sale of those products to Truck Center.

Affirmed.

WEBSTER, A.C.J., and PEKELIS, J., concur.