GLENWOOD SHOPPING CENTER LIMITED PARTNERSHIP v
K mart CORPORATION

Docket No. 69766. Submitted May 10, 1984, at Lansing.—Decided
    July 9, 1984.

> Glenwood Shopping Center Limited Partnership, the owner of a
> mall containing some 20 stores, brought an action against
> K mart Corporation, which leases premises for a store from the
> plaintiff. Glenwood's action was to recover alleged underpay-
> ments for electrical service and to compel K mart to pay a
> higher rate than it had previously paid. Electricity is supplied
> by Consumers Power Company at high voltage to a transformer
> and Glenwood is charged a "primary supply rate". Glenwood,
> in turn, supplies the tenants of the mall, billing them at a
> higher "secondary supply rate". From the inception of its lease
> with plaintiff's predecessor in 1961 K mart has been paying for
> its electricity at the lower primary rate. In 1976, Glenwood
> allegedly discovered that K mart should have been paying the
> secondary rate. K mart refused to pay the amounts past due,
> and this action was commenced. Among K mart's defenses was
> the assertion that it shared ownership of the transformer with
> plaintiff and its predecessors and should therefore receive
> electricity at the primary rate. The Oakland Circuit Court,
> Alice L. Gilbert, J., rendered an opinion in which it was
> impliedly held that Glenwood owned the transformer but di-
> rectly held that K mart could only be billed at the primary
> rate. The court also held that certain evidence of alleged oral
> modifications of the lease was inadmissible. Summary judgment
> was granted in favor of K mart. Plaintiff appealed, and defen-
> dant cross-appealed. *Held:*
>
> 1. The rate which plaintiff may charge defendant for electric-
> ity is dependent upon ownership of the transformer. Because
> there is a genuine question of fact with respect to ownership,
> the trial court erred in granting summary judgment under
> GCR 1963, 117.2(3) and in limiting plaintiff to charging the
> primary rate.
>
> 2. Other issues raised by plaintiff, relating to expert testi-
> mony and factual questions, were not addressed by the Court of

REFERENCE FOR POINTS IN HEADNOTES

[1, 2] 30 Am Jur 2d, Evidence §§ 1016, 1065.

Appeals because they are so closely related to the issue of ownership, which should be decided at the trial court level.

3. Defendant's claim on cross-appeal, that the trial court erred by not allowing defendant to present extrinsic evidence relating to the construction of the pertinent provision of the lease, is correct. The provision is ambiguous, and parol evidence which is not inconsistent with the provision is admissible to explain the provision.

4. Plaintiff has the authority to charge the higher secondary rate, should the ownership question be resolved in its favor.

Reversed and remanded.

1. EVIDENCE — PAROL EVIDENCE.

Parol or extrinsic evidence may be introduced to show what was in the minds of the parties at the time of making a contract or executing an instrument where the terms of the written contract or instrument are susceptible of more than one interpretation, or an ambiguity arises, or the intent or object of the instrument cannot be ascertained from the language employed therein.

2. EVIDENCE — PAROL EVIDENCE.

Parol evidence is admissible to explain the terms of a writing where the proffered parol evidence is not inconsistent with the written language of the instrument.

*Schlussel, Lifton, Simon, Rands, Kaufman, Galvin & Jackier* (by *Douglas E. Busbey),* for plaintiff.

*Weisman, Trogan, Young & Schloss, P.C.* (by *Anthony V. Trogan, Jr.),* for defendant.

Before: DANHOF, C.J., and V. J. BRENNAN and R. B. BURNS, JJ.

V. J. BRENNAN, J. Glenwood Shopping Center appeals as of right from a February 11, 1983, summary judgment in favor of K mart, entered by Judge Alice L. Gilbert, Oakland County Circuit Court. K mart Corporation has cross-appealed, raising alternative grounds upon which the judgment in its favor might be sustained.

The controversy concerns how much the plaintiff can charge for electricity it suplies to K mart.

Plaintiff owns and operates Glenwood Plaza, a shopping mall of 20 or so stores in the City of Pontiac. K mart leases a 95,000 square foot free-standing store in the mall and is the mall's largest tenant. The relationship between the parties goes back to June 9, 1961, when the mall opened and K mart, then known as S. S. Kresge Company, leased the space from landlords Herman Ross and Irving Stollman. In subsequent years, ownership of the mall passed from Ross and Stollman to M & W Limited Partnership and then to the present owner, Glenwood Shopping Center Limited Partnership, which includes the original Mr. Ross as a limited partner.

Electricity for the mall is supplied by Consumers Power Company in the form of primary voltage of 4,800 volts. That voltage is reduced by a transformer or a series of transformers to a capacity usable by the retail tenants of the mall. Because Consumers Power Company did not incur the expense of installing and maintaining the transformer and related equipment, it supplies electricity to Glenwood Shopping Center at the cheaper primary supply rate (PSR). Glenwood, in turn, bills its tenants for electricity at the higher secondary supply rate (SSR) pursuant to a resale agreement with Consumers Power Company.

K mart's several leases with Glenwood over the years have contained basically the same provision for payment of electrical service. Paragraph 15 of the current lease is illustrative:

"Tenant shall promptly pay for all public utilities rendered or furnished to Tenant's store unit during the lease term, including water, gas and electricity, provided separate meters shall be installed for Tenant. Landlord may install reregistering meters and collect any and all charges aforesaid from Tenant, and Land-

lord shall pay the proper public utility company or governmental unit for such utilities; *provided, however, Tenant shall not be charged more than the rates it would be charged for the same services if furnished direct to Tenant's store unit by such companies or governmental units.* Landlord covenants, represents and warrants that, during the lease term, said store unit shall at all times be connected to electric and gas lines of an adequate source of supply and to the water and sewer systems generally serving the area. Sewer charges or sewer taxes, regardless of the manner billed or assessed, shall be paid by Landlord." (Emphasis added.)

From its first lease in 1961, K mart paid Glenwood Shopping Center and its predecessor landlords for electricity at the favorable PSR. However, in November, 1976, Glenwood allegedly discovered that K mart should have been billed for electricity at the higher SSR. Accordingly, it demanded amounts allegedly past due and began to bill K mart at the SSR. K mart refused the demand for past due amounts and continues to pay for electricity only at the PSR.

On November 4, 1977, Glenwood commenced this action against K mart in Oakland County Circuit Court for alleged underpayments of electrical billings for the prior six years in the amount of $83,673.19. It also sought an order compelling K mart to pay electrical billings at the SSR. Among K mart's defenses was the assertion that it shared ownership of the transformer with Glenwood Shopping Center and its predecessors because, when the mall was built, K mart installed a transformer for its electrical service in order to obtain the more favorable PSR from Consumers and that it split costs with Mr. Ross in an 80% (K mart)—20% (Mall) proportion because Ross wanted to obtain the cheaper power to light the

mall's common areas and parking lots. In addition, K mart contended that it maintained the transformer and related equipment through the years, in spite of an obligation by the landlord to do so. Glenwood denied that K mart had an ownership interest in any part of the transformer and equipment and contended that, in any event, the alleged oral agreement to share ownership of the transformer in the past was superseded by at least four subsequent leases which obligated K mart to pay for electricity at the SSR as allegedly provided in ¶ 15 of the lease.

The parties' contentions were presented to Judge Gilbert in a series of motions for summary judgment by both parties over a period of years. Finally, on January 5, 1983, Judge Gilbert rendered an opinion in which she impliedly held that the transformer supplying power to K mart was owned solely by Glenwood; she directly held, however, that Glenwood was to bill K mart for electricity only at the PSR. Judge Gilbert also held that evidence of oral modifications of the written contract was inadmissible under the parol evidence rule and the Statute of Frauds, MCL 566.108; MSA 26.908. She then held that ¶ 15 of the lease clearly provides that "[t]he landlord may not charge K mart any more than the PSR, the rate Consumers Power would be permitted to collect if K mart received its electricity directly from them".

Glenwood moved for rehearing January 18, 1983, but Judge Gilbert denied rehearing and entered summary judgment for K mart by order entered February 11, 1983. She granted summary judgment pursuant to GCR 1963, 117.2(2) and 117.2(3).

Plaintiff's first claim is that the lower court erred by limiting plaintiff to the recovery of electrical charges at the PSR.

Paragraph 15 of the lease in controversy provides in pertinent part: "Tenant shall not be charged more than the rates it would be charged for the same services if furnished direct to tenant's store unit by such companies or governmental units."

Michigan Public Service Commission Standard Rules and Regulations, number 8, sheet 4.04, Rule 12 provides in pertinent part:

"D Resale:
"No landlord may charge his tenants more nor less for resold electric service than the tenants would be charged by the Company if served directly. If this requirement be violated the Company may refuse service to the building. The Company does not furnish nor maintain meters for the resale of energy by landlords to tenants."

In our opinion, any interpretation of the lease and MPSC regulations provisions cannot be properly considered without resolution of the highly disputed factual question of who owns the transformer and related equipment through which K mart receives its electricity. If K mart owns the transformer, then Consumers would furnish primary electric service to it at the lower PSR. In that case, Glenwood Shopping Center could not charge K mart the higher SSR.

Conversely, if K mart owns no transformer, then Consumers Power would furnish it power at the SSR and that is what Glenwood should be able to charge, if Glenwood owns the transformer. Looking at it another way, under the lease, K mart can be charged the same rate Consumers Power would charge it for the "same service". The same service is secondary voltage, that is, voltage reduced by a

transformer and, therefore, Glenwood should be able to charge K mart the higher SSR.

Therefore, we conclude that the trial court erred by limiting Glenwood to charging the PSR and also impliedly holding that Glenwood owned the transformer. With respect to the question of ownership of the transformer, there is a genuine issue of material fact. Therefore, the granting of summary judgment under GCR 1963, 117.2(3) was improper because a highly contested factual dispute germane to this action existed.

Plaintiff also argues that the lower court's ruling on the proper charge for electricity was not only unsupported on the record, but also contrary to the testimony of both plaintiff's and defendant's expert witnesses.

In light of our conclusion that the lower court's ruling was improper because the issue of ownership of the transformer is so critically interrelated to resolution of the proper rate Glenwood can charge K mart, it is our opinion that the matter could not have been resolved simply on the basis of expert witness testimony. The affidavits and depositions submitted by both parties involved, *inter alia,* the subject of rates which would have necessitated a finding of ownership before a rate determination could have been made.

Plaintiff's last claim is that the lower court could not properly grant summary judgment in favor of K mart by undertaking factual assumptions contrary to MPSC rules and regulations.

Plaintiff contends that Judge Gilbert erred by assuming or deciding the following critical factual issues on summary judgment:

"1. What rate would Consumers Power charge K mart for the secondary power it currently receives from

Glenwood if Consumers Power supplied the same service or power to K mart through a Consumers Power transformer?

"2. Would K mart be allowed to establish and own its own transformer under MPSC Standard Rules and Regulations?

"3. Would K mart be allowed to establish its own transformer at the shopping center by Consumers Power?

"4. Would K mart be allowed to establish its own transformer at the shopping center by Glenwood?

"5. Does the secondary supply rate or primary supply rate apply, under normal circumstances to a secondary power user such as K mart?"

We need not directly address plaintiff's claim at this time because of our determination that the issue of ownership is central to this case. It is apparent that the factual issues raised by plaintiff relate to the ownership issue and these issues should be resolved at the trial level.

K mart claims on cross-appeal that the trial court incorrectly determined that K mart could not offer testimony with respect to construction of the lease because of the parol evidence rule and the Statute of Frauds.

K mart argues that the parol evidence rule does not bar testimony concerning proper interpretation of ¶ 15 because K mart does not intend to offer evidence which is inconsistent with the language of the lease, but only evidence which will serve to explain the meaning of the clause. K mart contends that ¶ 15 is ambiguous in that it does not explicitly state what rate K mart is to be charged and, therefore, K mart should be able to offer proofs on the highest potential rate in light of the language stating that K mart will be charged by Glenwood at a rate no higher than the public utility would charge.

Because the paragraph is ambiguous, K mart argues extrinsic evidence is admissible to prove the existence of the ambiguity and the actual intent of the parties as an aid to the construction of the contract. Finally, K mart stresses that, where oral modifications of a written lease are permitted, it is a question that must go to trial and not be decided on motion for summary judgment.

Conversely, Glenwood insists that ¶ 15 of the lease is unambiguous and that, therefore, oral agreements inconsistent with it are inadmissible. That is especially true where the written lease agreements were entered into after the alleged oral modification. Glenwood claims that "[t]he impact of these confirming amendments is that they repeatedly ratified the existence of the original lease language, in ¶ 15, that allows Glenwood to charge K mart for electrical power at the higher or secondary supply rate as opposed to the lower or primary supply rate". Glenwood concludes that "K mart's defense of a secret oral agreement is barred, in total, by the parol evidence rule".

In our opinion, K mart's contention is correct. Paragraph 15 of the lease is ambiguous. Under it, Glenwood can charge K mart for electrical service only what a utility would charge. But the question arises, and it is unanswered by ¶ 15, what a utility could charge K mart if the utility provided K mart the same service directly. Hence, evidence may be received, not to contradict ¶ 15, but to explain it and to resolve the unspecified proper rate. What would Consumers Power charge K mart if Consumers provided electrical service directly through transformer equipment owned by Consumers, through transformer equipment owned by K mart or through transformer equipment owned by Glen-

wood? If that area is inquired into, then it becomes critical to ascertain who owns the transformer equipment and to what extent.

The general rule with regard to the receipt of parol evidence is stated in 30 Am Jur 2d, Evidence, § 1069:

"Whenever the terms of a written contract or other instrument are susceptible of more than one interpretation, or an ambiguity arises, or the intent and object of the instrument cannot be ascertained from the language employed therein, parol or extrinsic evidence may be introduced to show what was in the minds of the parties at the time of making the contract or executing the instrument, and to determine the object for or on which it was designed to operate. Written words may have more than one meaning, and while parol evidence will not be allowed to change a 'plain meaning,' it may be used to eliminate a doubtful one. If a written contract is so ambiguous or obscure in its terms that the contractual intention of the parties cannot be fully understood from a mere inspection of the instrument, extrinsic evidence may be received to enable the court to make a proper interpretation of the instrument, and in such a case the extrinsic evidence is considered to be an aid to the interpretation. Whether ambiguity exists in a written instrument, so as to authorize the admission of extrinsic evidence to explain it, is a question of law for the trial court."

If parol evidence is admissible, then evidence of the parties' prior dealings is also admissible to ascertain the intent of the parties, but not to vary or contradict the language of the agreement. Thus, evidence could be introduced which shows what a public utility would charge K mart, but it could not be introduced to show, for example, that K mart was not liable at all for electrical services because that interpretation would be contrary to

the plain words of the lease (K mart has to pay some amount for electricity). The general rule is:

"Where the language used in a contract is equivocal or ambiguous, subsequent acts or declarations of the parties showing the practical construction put upon the words may be resorted to for the purpose of ascertaining their intention, and parol evidence is admissible for this purpose. The practical construction of a grant established by years of uniform usage, acquiesced in by the public, and not denied by those adversely interested, has been said to be the strongest evidence that the grant has been rightly interpreted. However, where the language employed in a written instrument is plain and unambiguous, evidence of the practical construction put upon the words by the acts and declarations of the parties is not admissible to supply an interpretation of the instrument." 30 Am Jur 2d, Evidence, § 1072.

Where a meaning of a lease is in dispute, "[t]he real question is whether the proffered parol evidence is inconsistent with the written language. If there is no inconsistency, the parol evidence is admissible. See *Goodwin, Inc v Orson E Coe Pontiac, Inc,* 392 Mich 195; 220 NW2d 664 (1974)." *Union Oil Co of California v Newton,* 397 Mich 486, 488; 245 NW2d 11 (1976), *reh den* 398 Mich 952 (1976). There, the Supreme Court reversed a summary judgment for defendant where the offered parol evidence was consistent with the written language of the lease and, therefore, admissible parol evidence. Other decisions holding that parol evidence is admissible to explain the terms of a lease where the evidence is not inconsistent with the terms of the contract are *PBJ Company, Inc v Ben Duthler, Inc,* 89 Mich App 767; 282 NW2d 216 (1979); *Wheelmakers, Inc v City of Flint,* 47 Mich App 434; 209 NW2d 444 (1973);

*Wolverine Upholstery Co v Ammerman,* 1 Mich App 235; 135 NW2d 572 (1965).

K mart's final contention is that the trial court incorrectly ignored the fact that Glenwood could not qualify, in two respects, under controlling Michigan Public Service Commission regulations to charge K mart at the higher secondary rate.

K mart argues that Glenwood was not permitted to resell electricity it obtained from Consumers Power because under Public Service Commission Standard Rules and Regulations, Number 8, Rule 12D, sheet numbers 4.03 and 4.04, resale is allowed only by owners of mobile home parks and multiple occupancy buildings having at least 30 tenants. K mart claims that Glenwood qualifies under neither category.

Glenwood argues that it is permitted to resell electricity under Rule 12D because it has a waiver from Consumers Power Company under that rule. It appears that Glenwood does qualify under Public Service Commission Standard Rules and Regulations Number 12 to resell electricity it receives from Consumers Power at a profit. The regulation provides in pertinent part:

"MULTIPLE OCCUPANCY BUILDINGS—The owner or operator of an office building, apartment building, etc., with at least thirty tenants *(or less at the option of the Company where extensions of the Company service to the individual tenants is impractical)* whose combined requirements regularly exceed 20,000 kilowatt hours per month may purchase electric energy from the Company for resale to the tenants of the building on condition that service to each tenant shall be separately metered and that the tenants shall be charged for such service the current rate of the Company for similar service under like conditions." Standard Rules and Regulations, 12D. (Emphasis added.)

We have reviewed a copy of an agreement by which Consumers permits Glenwood to purchase wholesale electricity and resell it to its tenants and it appears to us that Consumers Power Company has consented to Glenwood's resale of electricity even though the shopping center does not have at least 30 tenants. Consumers has waived the requirements. Thus, K mart's argument has no merit.

Reversed and remanded for trial. We retain no further jurisdiction.