**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0059n.06
Filed: January 26, 2005

**No. 02-1251**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| **TEL-TOWNE PROPERTIES GROUP,** ) | |
| ) | |
| **Plaintiff-Appellant,** ) | |
| ) | **ON APPEAL FROM THE** |
| **v.** ) | **UNITED STATES DISTRICT** |
| ) | **COURT FOR THE EASTERN** |
| **TOYS "R" US-Delaware, Inc.,** ) | **DISTRICT OF MICHIGAN** |
| ) | |
| **Defendant-Appellee**. ) | |

**BEFORE:     KEITH and CLAY, Circuit Judges; OBERDORFER, District Judge**[*]

**OBERDORFER, District Judge**.  This contract dispute concerns the interpretation of a lease that was signed more than thirty years ago by the predecessors in interest of Plaintiff-Appellant Tel-Towne Properties Group ("Tel-Towne") and Defendant-Appellee Toys "R" Us-Delaware, Inc. ("TRU").  The sole issue is whether the lease expired before the lessee, TRU, exercised its option to renew it.  Tel-Towne, the lessor, sought a declaration that the lease expired January 31, 2001.  TRU maintains that the lease term extended through January 31, 2002.  TRU notified Tel-Towne on May 24, 2001, of its intent to extend the lease an additional five years; the timeliness of this notice depends on whether the lease had already expired.

Tel-Towne moved for judgment on the pleadings below, which motion the district court denied.  Instead, the district court granted TRU judgment *sua sponte*.  It held that the lease

---

[*]     The Honorable Louis F. Oberdorfer, United States District Court for the District of Columbia, sitting by designation.

unambiguously provided for a 2002 termination date. Tel-Towne moved for reconsideration, pointing to parol evidence supporting its interpretation of the lease. Tel-Towne also moved to amend the complaint to add a count to reform the contract to express what it perceived as the shared intent of the original parties. The district court denied both motions. Because the district court should have considered any admissible parol evidence proffered by Tel-Towne in interpreting the lease, we **REVERSE** and **REMAND** for reconsideration.

## I. BACKGROUND

**A.     Facts**

*1.      The Current Dispute*

On September 25, 1970, the predecessors in interest to Tel-Towne and TRU entered into a commercial lease for store premises in Southfield, Michigan (the "Lease").

The Lease provides that its "initial term . . . shall commence upon the date hereof and *shall terminate on the 31st day of January after the completion of the thirty-first (31st) full 'lease year,'* as said term is hereinafter defined." Section 2.01 (emphasis added). A "lease year" is defined to "mean *any twelve month period* during the term of this Lease *commencing upon a February 1st, except, however, (a) the first lease year shall commence upon the date hereof and end on January 31, 1971 . . . .*" Art. 35, ¶ B (emphasis added).

The parties dispute whether the Lease establishes an expiration date of January 31, 2001, as Tel-Towne claims, or January 31, 2002, as TRU alleges. The question is whether the "first lease year" – the four-month period from the signing of the Lease on September 25, 1970 through January

31, 1971 – is one of the thirty-one lease years to be counted in determining the initial term of the Lease. If so, the Lease expired on January 31, 2001. If not, it extended through January 31, 2002.

The Lease provides an option for the lessee to extend its term for an additional five years. To exercise that option, the lessee must notify the lessor of its intent to do so at least six months before the Lease expires. Art. 5. If the lessee remains after expiration of the Lease without any further written agreement, the lessee would hold over as a tenant from month to month. Art. 25.

The present dispute arose when TRU attempted to exercise its option to renew the Lease. On May 24, 2001, TRU sent Tel-Towne a letter giving notice that it was exercising its option to extend the Lease for five years. Tel-Towne took the position that the Lease had expired on January 31, 2001, and that the notice was therefore untimely.

2. *Evidence of the Original Parties' Understanding of the Lease*

Tel-Towne acquired the leasehold property from the original lessor on July 7, 1976. The 1976 sales agreement lists January 31, 2001, as the expiration date of the Lease. The same expiration date is listed in the original lessor's Form 10-K for the fiscal year prior to the sale. This is consistent with the 1972 Annual Report of the original lessor, which described the purchase-and-leaseback transaction that led to the Lease as "providing for [an] initial term[] of approximately 30 years."

In addition, on April 27, 1976, a representative of the original lessor, Daniel L. Reit, sent a letter reflecting the January 31, 2001 expiration date to the Tel-Towne affiliate through which the leasehold property was acquired. Tel-Towne proffered evidence that while Mr. Reit was associated with the initial *lessor* at the time of the 1976 sale, he had originally signed the Lease in 1970 on

behalf of the then *lessee*. He also signed a guaranty in 1970 on behalf of the initial lessee's parent company. That company later became TRU.

## B.    Procedural History

### 1.    *Tel-Towne's Motion for Judgment on the Pleadings*

Tel-Towne filed this action on July 10, 2001. On September 5, 2001, Tel-Towne moved for a declaration on the pleadings that the Lease had expired and that TRU had no right to renew it. Tel-Towne argued that the Lease unambiguously established a January 31, 2001 expiration date.

TRU argued that the initial term of the Lease extended through January 31, 2002, and that its exercise of the option to renew on May 24, 2001, was therefore timely. In the alternative, TRU asked that, if its attempted exercise of the option was untimely, the court equitably intervene to allow TRU to renew the lease. TRU asked that "Tel-Towne's Motion . . . be denied," but did not move to dismiss the complaint or otherwise seek judgment in its favor.

In reply, Tel-Towne claimed that not only was its interpretation correct, but it was also "the same interpretation understood by the original parties" to the Lease. Tel-Towne supported this claim with parol evidence. Tel-Towne also argued that if the court rejected its position and "believe[d] the Lease is in some manner ambiguous, then it must conduct a hearing rather than accept the unsupported arguments Defendant makes in its brief."

### 2.    *The Initial District Court Decision*

On January 23, 2002, the district court denied Tel-Towne's motion. It went on to grant judgment *sua sponte* to TRU, which had not requested that relief.

The district court found persuasive TRU's argument that the first lease year – which lasted only four months, per the definition in Paragraph B of Article 35 – should not be considered one of the thirty-one "full 'lease years'" comprising the initial term of the Lease.   Relying explicitly on what it termed a "controlling rule of contract construction . . . [that] no word should be rejected as mere surplusage if the court can discover any reasonable purpose thereof," the court found the Lease "to be unambiguous, and its interpretation to be a question of law to be determined only from the terms of the contract itself."  Finding that counting the first lease year as one of the thirty-one "full lease years" would require it "to ignore the word 'full' in front of 'lease year' in paragraph 2.01," the district court held that the Lease extended through January 31, 2002.  In finding the Lease unambiguous, the court did not mention or consider any of Tel-Towne's evidence as to the parties' understanding of the termination date.

*3.     Tel-Towne's Motions for Rehearing and To Amend the Complaint*

On February 6, 2002, Tel-Towne filed a Motion for Rehearing on the ground that the district court's *sua sponte* entry of judgment for TRU deprived it of "notice and an opportunity to be heard." Tel-Towne argued that its claim that the Lease was unambiguous as to the 2001 expiration date was not a concession that the Lease was unambiguous as to date per se.  Its own motion, Tel-Towne claimed, could not put it on notice that judgment might be entered *against* it.  Tel-Towne argued that the Lease was "at the very least, ambiguous in stating a January 31, 2002 expiration date," making it proper to consider parol evidence.  That parol evidence, said Tel-Towne, showed that both parties recognized that the Lease expired in 2001.  Tel-Towne also claimed that, even if the district court disagreed, Tel-Towne should be permitted to amend its complaint to state a claim for reformation

of the lease to reflect the parties' true intent that the Lease expire on January 31, 2001. On February 20, 2002, Tel-Towne filed a Motion for Leave to Amend Complaint to add a reformation count.

The district court denied Tel-Towne's Motion for Rehearing. It held that its *sua sponte* decision was appropriate since "the material facts were not in dispute" and the "contract was unambiguous and supported Defendant's interpretation" as a matter of law. The district court did not address Tel-Towne's substantive arguments about the interpretation of the Lease, noting only that "the additional arguments Plaintiff raises in the Motion for Reconsideration are the same issues raised in the original motion, albeit phrased differently." The court also denied Tel-Towne's motion to amend the complaint, but gave no reason for this decision.

## II. ANALYSIS

### A.    Standard of Review

We review *de novo* the substance of a decision entering judgment on the pleadings. *EEOC v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001). We review procedural aspects, such as entering judgment *sua sponte*, for abuse of discretion. *Shelby County Health Care Corp. v. Southern Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000).

Michigan law governs interpretation of the Lease. Under Michigan law, the construction of an unambiguous contract is a question of law reviewed *de novo*, as is the initial question of whether a contract is ambiguous. *Port Huron Educ. Ass'n v. Port Huron Area Sch. Dist.*, 550 N.W.2d 228, 237  (Mich. 1996). On the other hand, if contract language is ambiguous, its interpretation is a question of fact. *Id*.

A motion for rehearing of a decision entering judgment is considered a motion to alter or amend a judgment pursuant to Federal Rule of Civil Procedure 59(e). We ordinarily review decisions on such motions for abuse of discretion. *Columbia Gas Transmission, Corp. v. Limited Corp.*, 951 F.2d 110, 112 (6th Cir. 1991). However, review is *de novo* where the lower court rejects such a motion based on an error of law. *Huff v. Metropolitan Life Ins. Co.*, 675 F.2d 119, 122-23 n.5 (6th Cir. 1982). Finally, while denial of a motion to amend the pleadings is typically reviewed for abuse of discretion, it may be reviewed *de novo* if it was based on the futility of the amendment or some other legal conclusion. *Dubuc v. Green Oak Township*, 312 F.3d 736, 743 (6th Cir. 2002).

**B.      Entry of Judgment and Denial of Motion for Reconsideration**

Michigan applies familiar principles of contract law: "The primary goal in interpreting contracts is to determine and enforce the parties' intent. To do so, [a court] reads the agreement as a whole and attempts to apply the plain language of the contract itself." *Old Kent Bank v. Sobczak*, 620 N.W.2d 663, 666-67 (Mich. Ct. App. 2000) (internal citations omitted). Where a contract is not ambiguous, courts "are obligated to accept as the agreement of the parties the plain meaning of the words used." *Stine v. Continental Cas. Co.*, 349 N.W.2d 127, 138 (Mich. 1984). On the other hand, "[w]here a written contract is ambiguous, a factual question is presented as to the meaning of its provisions [and] the intent of the parties in entering the contract." *Klapp v. United Ins. Group Agency, Inc.*, 663 N.W.2d 447, 454 (Mich. 2003) (internal quotation omitted). When a contract is ambiguous, "the fact finder must interpret the contract's terms in light of the apparent purpose of the contract as a whole, the rules of contract construction, and extrinsic evidence of intent and meaning." *Id.* (quoting 11 Williston, Contracts § 30:7 (4th ed.)).

We begin by asking whether the Lease is ambiguous as to its termination date. The starting point is, of course, the contract language. The Lease term began on September 25, 1970, when it was signed, and terminated "on the 31st day of January after the completion of the *thirty-first (31st) full 'lease year'*, as said term is hereinafter defined." Section 2.01 (emphasis added). A "lease year" is "any *twelve month period* during the term of this Lease commencing upon a February 1st, *except*, however, (a) *the first lease year shall commence upon the date hereof [September 25, 1970] and end on January 31, 1971 . . . .*" Art. 35, ¶ B (emphasis added).

Tel-Towne argues that since Paragraph 35B defines the period from September 25, 1970 through January 31, 1971 as the "first lease year," that period counts as the first of the thirty-one "full 'lease years'" of the initial term. TRU claims, however, that a *full* lease year must be a twelve-month period and that the "first lease year" cannot be counted as part of the thirty-one-year initial term since it is only a partial year.

TRU relies heavily on the rule of construction that the district court found "controlling":

> It is a cardinal principle of contract construction that a contract is to be construed as a whole; that all its parts are to be harmonized so far as reasonably possible; that every word in it is to be given effect, if possible; and that no part is to be taken as eliminated or stricken by some other part unless such a result is fairly inescapable. . . Every word in the agreement must be taken to have been used for a purpose, and no word should be rejected as mere surplusage if the court can discover any reasonable purpose thereof which can be gathered from the whole instrument.

*Laevin v. St. Vincent de Paul Soc. of Grand Rapids*, 36 N.W.2d 163, 164 (Mich. 1949) (internal citations and quotations omitted). TRU argues, and the district court agreed, that its interpretation of the Lease is the only one that gives meaning to the word "full." Otherwise, that word would be

"mere surplusage" since the Lease would provide for a 2001 termination date if it simply omitted the word "full."

Tel-Towne responds that its interpretation is consistent with giving "full" its ordinary meaning of "containing all 'normal or possible' months" – which here would mean "four for the first stub year and twelve months for each year thereafter." Appellant's Br. at 39. Tel-Towne also argues that TRU's interpretation suffers the same flaw Tel-Towne's interpretation is alleged to suffer: it would make surplus certain language in the Lease definition of its "initial term." Tel-Towne claims that, on TRU's interpretation, there is no reason for the Lease to define its "initial term" by reference to a definition of "lease year" that includes the partial year from September 25, 1970 through January 31, 1971. That is, if the Lease defined its initial term as terminating on the January 31st after completion of the thirty-first *full year*, it would provide for a 2002 termination date in a more straightforward and direct manner than the language actually used. The language italicized in the following Lease definition – the "thirty-first (31st) full '*lease* year, *as said term is hereinafter defined*,'" § 2.01 (emphasis added) – would thus be surplus.

Tel-Towne has raised a serious question as to whether the district court properly found the Lease unambiguously established a 2002 expiration date. The insistence that only a twelve-month period can be a "full lease year" appears to read the word "lease" out of the definition of the Lease term in much the same way that Tel-Towne's interpretation is said to read the word "full" out of this definition. While it is clear that the period from September 25, 1970, through January 31, 1971, is not a "full year," that need not mean it is not a "full *lease* year." After all, it is the full, that is, complete and entire, length of the "first lease year," as defined in paragraph 35B of the Lease.

We need not, however, decide whether the Lease is ambiguous based solely on our review of the contractual language. Michigan law permits the "use of extrinsic evidence . . . to *prove the existence of a potential ambiguity*," as well as to resolve any ambiguity. *Wonderland Shopping Ctr. Venture Ltd. P'ship v. CDC Mortgage Capital, Inc.*, 274 F.3d 1085, 1095 (6th Cir. 2001) (emphasis added). Such evidence can, and should, be considered in determining whether a contract is ambiguous so long as it "is not inconsistent with the terms of the written contract." *Ford Motor Co. v. Northbrook Ins. Co.*, 838 F.2d 829, 833 (6th Cir. 1988).

Moreover, evidence of "subsequent acts or declarations of the parties showing the practical consideration put upon [equivocal or ambiguous] words" may be considered "for the purpose of ascertaining [the parties'] intention, and parol evidence is admissible for this purpose." *Glenwood Shopping Ctr. Ltd. P'ship v. K Mart Corp.*, 356 N.W.2d 281, 286-87 (Mich. Ct. App. 1984) (quoting 30 Am. Jur. 2d, Evidence, § 1072). "Michigan law provides that the parties' practical interpretation of their contract, and their course of conduct under that contract, are entitled to great weight in interpreting ambiguous provisions of the contract." *Terry Barr Sales Agency, Inc. v. All-Lock Co.*, 96 F.3d 174, 180 (6th Cir. 1996).

Here, Tel-Towne submitted extrinsic evidence that – at least as of 1976 – at least one (and possibly both) of the parties understood that the lease would terminate in 2001. The district court did not address this evidence, either in initially entering judgment *sua sponte* for TRU or in denying Tel-Towne's motion for reconsideration. The district court's failure to consider the evidence Tel-Towne proffered was error. The failure to consider evidence that "would have helped the court interpret the contract in question [and] might have altered the outcome of the case" is reversible

error. *Oakland County v. City of Detroit*, 265 N.W.2d 130, 134 (Mich. Ct. App. 1978) (reversing and remanding to allow the lower court to reconsider its interpretation of a contract in light of extrinsic evidence it had mistakenly refused to consider). Because the extrinsic evidence Tel-Towne submitted "is not inconsistent with the terms of the written contract," it should have been considered, if otherwise admissible. The question whether a particular item of parol evidence is admissible, and for what purpose, is for the district court in the first instance.

A general rule of construction – like the one the district court found controlling here – should not be given precedence over the parties' shared understanding of the contractual language, if that shared understanding can be established. "Once an ambiguity is removed by the parties' conduct, there is no longer a need to apply a rule of construction." *William C. Roney & Co. v. Federal Ins. Co.*, 674 F.2d 587, 590 (6th Cir. 1982) (practical construction shown by parties' conduct "should take precedence over the rule that a contract of insurance is construed against its drafter").[1] "[U]seful as other rules of construction may be, paramount is the one that effect must be given to the intent of the parties gathered from the instrument as a whole." *Associated Truck Lines v. Baer*, 77 N.W.2d 384, 387 (Mich. 1956) (distinguishing its interpretation of contractual language from that given in *Laevin* on the ground that "[p]revious decisions of this and other states are helpful only as

---

[1] Although TRU invokes the similar rule that ambiguous lease terms are construed against the lessor, unless drafted by the lessee, this principle is not relevant here. This rule is not one for the court to apply in construing a contract as a matter of law, but one for a *jury* to consider in interpreting an ambiguous contract. Even then, it "is only to be applied if all conventional means of contract interpretation, *including the consideration of relevant extrinsic evidence*, have left the jury unable to determine what the parties intended their contract to mean." *Klapp v. United Ins. Group Agency, Inc.*, 663 N.W.2d 447, 455 (Mich. 2003) (emphasis added).

they enunciate general rules of construction but they are scarcely controlling here because none involves anything similar to [this] clause").

Accordingly, we will remand this case for the district court to reconsider its interpretation of the Lease in light of any admissible extrinsic evidence. Because we resolve this question on substantive grounds, we do not reach the issue of whether entering judgment *sua sponte* was proper.

## C.    Denial of Motion to Amend

The district court provided no explanation for denying Tel-Towne's motion to amend the complaint to add a count for reformation of the contract. Although this is a matter ordinarily within a district court's discretion, the failure to give any basis at all for this decision is an abdication, rather than an exercise, of discretion. Moreover, some explanation is warranted in light of the general rule that amendment should be permitted on a "liberal" basis "to adhere to the principle that cases should be tried on their merits rather than on the technicalities of pleading." *Fisher v. Roberts*, 125 F.3d 974, 977-78 (6th Cir. 1997) (internal quotations omitted).

The main argument TRU advances in support of the district court's denial of the requested amendment is that Tel-Towne should not be permitted to amend at such a "late" stage, that is, after judgment was granted. (The "lateness" of the stage may be subject to some debate here, in light of the fact that judgment was granted *sua sponte* without any prior notice to Tel-Towne.) TRU does not argue that there is any *legal* infirmity to a claim for contract reformation under the present circumstances, nor did the district court find that one existed.

Under the circumstances, justice would seem to favor the approach that would allow the reformation issue to be considered on its merits, or at least require the district court to provide a

basis for choosing not to do so. Accordingly, the district court's denial of the motion to amend is

vacated and the issue is remanded for the district court's reconsideration.

### III.  CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's grant of judgment in favor of

TRU and its denial of Tel-Towne's motion to amend the complaint, and **REMAND** the case for

proceedings consistent with this opinion.